UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN
MILWAUKEE DIVISION

HORIZON WEST CONDOMINIUM HOMES ASSOCIATION, INC., DR. BENJAMIN CHUDY, KIPP KENNEDY, FRAN O'HERRON, ALLAN TURKAL, TOM STARK, HOLLY BERRY AND ROBERT BERRY, PATRICIA ESPOSITO, ALVIN PULCIVER AND GERALDINE PULCIFER, CHRIS KURPIEL, RANDY LIJEWSKI AND KATHY LIJEWSKI, IONE KOHLER, SCOTT HASTREITER AND ELIZABETH HASTREITER, TRINA AND BRIAN LUDWIG, LAURA PETERSON, AND THERESA LAMACK, CARLOS BERGIN, LINA VENCI AND ROLLY VENCI, ROBERT KREINZ, TONYA NIESKES, JOAN CAVE, VIRGINIA CLASEN, DOROTHY THIELE, MICHAEL HANSEN, KAREN DUNAJSKI, JOHN TANKERSLEY, STEVE PIKE, LINDA KOCONIS, JAMES ROTH,

on their own behalf and on behalf of all others similarly situated,

Plaintiffs,

v. Case No. 2:22-CV-00597

TRAVELERS INDEMNITY COMPANY OF CONNECTICUT,

Defendant.

---

**BRIEF IN RESPONSE TO MOTION TO DISMISS**

---

## I. INTRODUCTION

In December of 2021 repair work was being completed on exterior balconies at condominium homes in Waukesha, Wisconsin. During the course of this repair work, several insured events occurred including the discovery of latent, unforeseen damages from an independent but contributory event. Various types of property at the location, including buildings, are covered by an insurance policy issued by Travelers Indemnity of Connecticut (hereinafter

referred to as "Travelers"). This policy provides the broadest coverage available for insurable perils, (so-called open perils insurance also known as special causes of loss), wherein any loss is considered to be caused by an insured loss unless there is a specific exclusion. It also applies to each event or occurrence of loss that causes damages during its policy period. The building and personal property covered by the policy are owned by Horizon West Condominium Homes Association, Inc., a non-stock corporation originally incorporated July 25, 2002, and the individual homeowners (hereinafter "Horizon West"), and there is covered lost income suffered by the Association as well as covered extra expense incurred by all.

The first event that is the subject of this insurance is the latent insured damages discovered in December and can best be described as incomplete and therefore fraudulent initial construction, as the building was certified by the builder as complete. This issue is combined with inadequate inspection practices resulting in the City of Waukesha certifying the impaired building for occupancy back in 1966. The specific impairment, just discovered in December, is that environmental protection for structural members was and has been missing. Liquid intrusion from an unknown condition occurred, also likely the subject of property insurance coverage under the policy. Unbeknownst to the insureds, over a period of time this damage weakened some of the building structure. This knowledge manifested suddenly when the balcony removals allowed for the extent of the damage to be discovered. Structural damage includes, but is not limited to, holes, pitting, emaciation, and wearing away (all insured causes of loss) with all such damage well beyond normal or expected environmental wear and tear, corrosion or deterioration of a structure or its parts as is excluded from insurance, or normal and expected atmospheric corrosion that results and manifests in a generally uniform manner that is also excluded.

Another insured event occurred when several balconies were removed that were unknowingly part of the building's lateral support system. By removing the balconies, it suddenly and unintentionally destabilized the building, rendering it completely uninhabitable. After the destabilization occurred, the homeowners were ordered out of their homes and forced to find refuge as it was determined by engineers, including several working with the City of Waukesha, that the building was severely further damaged by the balcony removals.

As to certain types of Covered Property, the evacuation itself is an insured event that caused damages. Evacuation is a covered cause of loss that would not be defeated by the Government Action exclusion that solely deals with seizure and destruction.

In each case, the homeowners have lost their home, their investment, and numerous items of personal property. They have been devastated by these turns of events as one would expect. Yet, when earnest, timely and legitimate claims were made with Travelers, these homeowners were met with nothing but demands and rejections—though clearly the rejections are wrongful given the number of insured perils that have caused and/or contributed to the damage. The homeowners, whether by way of the homeowner's association or the individual unit owners, are entitled to the benefits of their policy as will be demonstrated in this brief.

Travelers has filed a Motion to Dismiss based on the allegations of the Complaint and the policy in question. It must be noted that the defense motion includes many facts that are well outside the four (4) corners of the Complaint rendering this a motion for summary judgment, while at the same time, the defense clings to the 12(b)6 motion in an effort to try to forego dealing with discovery. It matters not. The policy provides several different areas where coverage is granted. In addition, the policy curiously provides for payments if the building would collapse, but if the City of Waukesha orders the residents out before it collapses and the building is ordered razed because of structural infirmities, Travelers would have the Court deny coverage. This is contrary to

Wisconsin public policy inasmuch as it would tend to encourage the homeowners of Horizon West to stay in the premises pending the collapse of the building in order to afford coverage. Of course, this kind of coverage language cannot be tolerated in the State of Wisconsin since it is clearly against public policy to require homeowners to endanger themselves in order to effectuate coverage.

In all, the policy in question is a patchwork type of policy with various pertinent additional coverages and coverage enhancements mixed in throughout its body. It also contains several ambiguities Travelers is attempting to take advantage of to reduce or eliminate coverage, not the least of which is the initial question of who might be the insured.

## II. ARGUMENT

### A. WHO IS THE INSURED?

The Travelers policy is not entirely clear on who the insured is under the policy. That is why the plaintiff has sued both in the name of the homeowner's association and, presumably in the alternative, the individual unit holders.

Looking at the policy, the policy declarations indicate the insured is: "Horizon West Condominium Homes". The policy declarations indicate the policy has an insurable limit of $17,704,099.00. there are many other add-ons throughout the policy which will be discussed below. *See*, Affidavit of Michael J. Ganzer at Exhibit A—the policy. However, in addition, the schedule of locations further indicates that the address of the condominium building and then indicates occupancy "condominium 13+". At various points in the policy, language that is primarily located in the Wisconsin Changes portion of the policy talks about precluding coverage for matters like domestic abuse. *See,* Wisconsin Changes portion of the policy at ¶C2. The balance of the Wisconsin Changes portion of the policy seems to direct the policy toward individual homeowners speaking also of personal property and like matters.

The reason it is important as to who is the insured is that the policy is uncertain-which uncertainty and/or ambiguity should inure to the benefit of the policyholders which in this case, since it is uncertain, would be both the homeowner's association and the individual unit owners. The name of the insured under the policy is "Horizon West Condominium Homes" while the formal name of the company, "Horizon West Condominium Homes Association, Inc." is a non-stock corporation originally incorporated July 25, 2002. *See*, Affidavit of Michael J. Ganzer at Exhibit H. Due to the policy uncertainty with respect to the named insured, it should allow for coverage of both the homeowners association and the individual unit owners.

**B. <u>THE POLICY</u>**

The policy declarations indicate the policy has an insurable limit for described Building Property of $17,704,099.00. Additionally, there is a limit for Your Business Personal Property of $126,604.00 and a limit for Business Income and Extra Expense of $128,395.00. There are then pages of limits for the many Additional Coverages and Coverage Enhancements that grant and take away coverage interspersed throughout the policy which will be discussed below. In addition, it is important to note that these limits apply "at each described premises" and the only description of the premises is contained in the Schedule of Locations that applies to the Declarations and states "condominium 13+".

At various points in the policy, language that is primarily located in the Wisconsin Changes portion of the policy talks about precluding coverage for matters like domestic abuse. *See,* Wisconsin Changes portion of the Policy at ¶C2. The balance of the Wisconsin Changes portion of the policy seems to direct the policy toward individual homeowners speaking also of personal property and like matters.

As discussed above, the Travelers' policy provides very broad coverage with respect to the insured perils. While Travelers has the burden of proof to show that a covered cause of loss is excluded, they have selectively attempted to set forth exclusions that might apply without ever addressing the multiple events that occurred leading to the damage nor any analysis of the liquid intrusion cause, nor unintentional damage to the stability through removal of the balconies, nor the evacuation.

### C. BURDEN OF PROOF

The first question under burden of proof is whether this is a Motion for Dismissal under Federal Rule 12(b)(6) or a Motion for Summary Judgment under Federal Rule 56(a). As stated above, numerous matters are discussed in the brief of the defendant, including items that do not come within the rubric of the 12(b)(6) motion.

The defendant adds the following matters, outside the complaint and without being included in a declaration or affidavit as is required under Rule 56 and not otherwise allowed because the items are not a part of the complaint:

a. Letter of Michael J. Ganzer at Exhibit 1 to the Brief;
b. Permit details;
c. Correspondence from Community Development;
d. Letter from Waukesha Fire Department;
e. Affidavit of Harold McDonald;
f. Sworn Proof of Loss;
g. Relies on the fact the building is still standing but that doesn't relate to the complaint.

The defendant's 12(b)(6) motion must be denied if for no other reason than the inclusion of the extraneous matters cited and not otherwise sworn or presented by a declaration, required under Rule 56 and not permissible under Rule 12(b)(6). The Defendant has taken liberty with the FRCP and that should be a sufficient basis to deny the motion. It should be denied because it is not really a 12(b)(6) motion but a Rule 56(a) motion that has entirely different standards and which permits

the taking of discovery. The situation is addressed in the Advisory Committee Notes of FRCP 12(b)(6):

> The addition at the end of subdivision (b) makes it clear that on a motion under Rule 12(b)(6) extraneous material may not be considered if the court excludes it, but that if the court does not exclude such material the motion shall be treated as a motion for summary judgment and disposed of as provided in Rule 56. It will also be observed that if a motion under Rule 12(b)(6) is thus converted into a summary judgment motion, the amendment insures that both parties shall be given a reasonable opportunity to submit affidavits and extraneous proofs to avoid taking a party by surprise through the conversion of the motion into a motion for summary judgment. In this manner and to this extent the amendment regularizes the practice above described. As the courts are already dealing with cases in this way, the effect of this amendment is really only to define the practice carefully and apply the requirements of the summary judgment rule in the disposition of the motion.

The Courts have ruled generally along the lines of the Committee Note cited. Motions to Dismiss under FRCP 12(b)(6) cannot include materials outside the pleadings with narrow exceptions. *Design Ideas Ltd. v. Lowe's Home Ctrs.,* 2021 U.S. Dist. Lexis 228335 at headnote 6, *citing*, *McCready v. eBay*, 453 F.3d 882 at 981 (7th Cir. 2006); *Levenstein v. Salafsky*, 164 F.3d 345 at 347 (7th Cir. 1998). Under FRCP 56(f), judgment can be granted to plaintiffs and it should be granted here. The language of Rule 56(f):

> (f) Judgment Independent of the Motion. After giving notice and a reasonable time to respond, the court may:
> (1) grant summary judgment for a nonmovant;
> (2) grant the motion on grounds not raised by a party; or
> (3) consider summary judgment on its own after identifying for the parties material facts that may not be genuinely in dispute.

Since this is an all-perils policy and since there are no applicable exclusions, there is no reason not to enter judgment for the Plaintiffs as is allowed pursuant to Rule 56(f)(1).

The initial burden of proof for any policy is on the insured to show that the claim comes within the policy's coverage. The insurance company then has the burden of proving an exception to the coverage or that the damage comes within any exclusion. *Estate of Ermenc v. American Family Mutual Insurance Company*, 221 Wis.2d 478, 585 N.W.2d 679 (Ct. App. 1998). The

burden then shifts to the insured to establish an exception to the claimed exclusion. *Just v. Land Reclamation, Ltd.*, 151 Wis.2d 593, 445 N.W.2d 683 (Ct. App. 1999), *reversed on other grounds*, 155 Wis.2d 737, 157 Wis.2d 507, 456 N.W.2d 570 (1990).

When the provisions of a rider or endorsement are irreconcilable with the policy in question, the rider controls the interpretation. *Inter-Insurance Exchange of Chicago Motor Club v. Westchester Fire Insurance Company*, 25 Wis.2d 100, 130 N.W.2d 185 (1964). The interpretation of an insurance policy if ambiguous or susceptible to more than one meaning is interpreted against the drafter or in accordance with the reasonable expectations of the insured. *Hedtke v. Sentry Ins. Co.*, 109 Wis.2d 461 at 487; 326 N.W.2d 727 at 739-740 (S. Ct. 1982) *citing*, *Cieslewicz v. Mutual Service Cas. Ins. Co.,* 84 Wis.2d 91 at 97-98, 267 N.W.2d 595 at 598-599 (1978).

**D. PROOF OF CLAIM**

Repeatedly, Travelers points to the lack of a proof of claim to somehow deny coverage. Proof of Claim has been submitted to the attorneys for Travelers but it was done only because it could be easily done with the homeowners association since the president has executed the proof of loss. *See*, Affidavit of Michael J. Ganzer at Ex. I. However, the demand for proof of loss is a red herring. The homeowners association and individual unit holders have been working with Travelers since December of 2021 and especially January 2022. *See*, Affidavit of Michael J. Ganzer at Ex. K. A proof of loss is meant only to put Travelers on notice of the claim and their notice was given many months ago. In fact, working cooperatively with the purported insured. Even the insurance company's own engineers point out in their report that the homeowners association and/or homeowners have been cooperative in trying to understand the circumstances. *See*, Affidavit of Michael J. Ganzer at Ex. B. Despite this, even the policy does not require the filings demanded by Travelers. The insurance policy provides that legal action can only be brought

if there is "…full compliance with all the items of this Coverage Part; and, brought within 2 years after the date on which direct physical loss or damage occurred". *See*, Policy at Commercial Property Conditions, Section D.

The state of the law in Wisconsin is the insurance company is entitled to notice as soon as practicable, which was done in this particular instance. The Wisconsin Supreme Court laid out the basis for the notice and knowledge requirement in *Anderson v. Aul*, 2015 WI 19, 361 Wis.2d 63, 862 N.W.2d 304. The Court stated as follows:

> The requirement in a claims-made-and-reported policy that claims be reported within the policy period and the requirement that notice be provided "as soon as practicable" or within a stated period are distinct and serve different purposes. The requirement that claims be reported during the policy period "is directed to the temporal boundaries of the policy's basic coverage terms…If the claim is not reported within the policy period, there is no initial grant of coverage. As we stated previously, the purpose of the requirement that notice be given "as soon as practicable" or within a stated period is to enable the insurance company to begin investigating the claim.

Wis. Stats. §631.81 provides the rationale for the need for the filing of a claim:

> **631.81 Notice and proof of loss.**
> **(1)** TIMELINESS OF NOTICE. Provided notice or proof of loss is furnished as soon as reasonably possible and within one year after the time it was required by the policy, failure to furnish such notice or proof within the time required by the policy does not invalidate or reduce a claim unless the insurer is prejudiced thereby and it was reasonably possible to meet the time limit.
> **(2)** METHOD OF GIVING NOTICE. It is a sufficient service of notice or proof of loss if a 1st class postage prepaid envelope addressed to the insurer and containing the proper notice or proof is deposited in any U.S. post office within the time prescribed. The commissioner may expressly approve clauses requiring more expeditious methods of notice where that is reasonable.
> **(3)** MEANING OF INSURER'S ACTS. The acknowledgment by the insurer of the receipt of notice, the furnishing of forms for filing proofs of loss, the acceptance of such proofs, or the investigation of any claim are not alone sufficient to waive any of the rights of the insurer in defense of any claim arising under the insurance contract.

Travelers claims it is entitled to relief from its own policy based upon a missing proof of loss. Well, the proof of loss has been submitted. *See*, Affidavit of Michael J. Ganzer at Ex. I.

Completion of the form is of absolutely no import as it relates to the claims before this Court. Moreover, the entire reason for the proof of claim, to wit: to put the insurance company on notice of a claim, was done within days of discovery of the damage that destabilized the building to the point of evacuation. Thereafter, Travelers inspected the premises, brought in its own engineers, reviewed reports from other engineers and the City of Waukesha, and had its engineers issue a 15-page report with attachments. *See*, Affidavit of Michael J. Ganzer at Ex. B. Travelers was on full notice and thoroughly investigated the claim, but by its own actions, seems to have waived the requirement of the proof of loss form before such time as it started treating this as a claim—at least at the outset. *See*, Affidavit of Michael J. Ganzer at Exhibits J and M. Travelers has been working on this claim for months and it is entirely disingenuous of Travelers to now move to dismiss when it had full knowledge, access to the premises, and access to all of the various reports available through the City of Waukesha. The fact that a proof of loss form was not filed, when in fact in Wisconsin the insureds may have up to one year to do so, is entirely upon Travelers which undertook an extensive investigation into these claims only to shift to a technicality to try and avoid its obligated payment. This is indicative of the measure to be given to the substance of the Travelers' argument.

**E. <u>GRANT OF COVERAGE</u>**

Early in the policy documents there are several different bases which Travelers identifies to deny coverage. Travelers decides that it objects to coverage here (contrary to its previous claims) by relying on the exclusions for rust, governmental actions, and apparently, construction related. The homeowners association and the individual property owners are making claims here for the policy limits. The policy limits are $17.4 million which reflects the agreed value of the building. This damages figure was agreed to by Travelers. Where the insurer has set the replacement value, the Courts will enforce the stated value where there is a total loss. *Gambrell v. Campbellsport Mut.*

*Ins. Co.*, 47 Wis.2d 483, 177 N.W.2d 313 (1970); *Gimbels Midwest Inc. v. Northwestern Nat'l Ins. Co*., 72 Wis.2d 84, 240 N.W.2d 140 (1976). The building has been destabilized to the point of not being able to be inhabited. In making their determination that there is not a covered cause of loss, Travelers simply denies coverage without being able to explain whether the cause is related to any of the enumerated exclusions or some other reasons. In truth, neither the homeowner's association nor the individual unit owners had knowledge of any of the building deterioration that gave rise to the destabilization and resulting order to evacuate and subsequent raze order. The order to evacuate was made by the City of Waukesha for the safety of the residents of the condominium units. It was only after the balconies were removed and the local authorities had the opportunity to review the skeleton of the building was it learned that those significant structural problems with the beams and other rusted materials and as the unintentional de-stabilization and uninhabitability occurred it is only at that point it was clear there was an insured loss. *See* Affidavit of Michael J. Ganzer at Ex. B, C, D, E, F and G.

Additionally, one of the more curious aspects of the subject policy concerns the definition of a "covered cause of loss". The only attempt to define "covered cause of loss" appears in the Building and Personal Property Coverage Form at page 3 of 20 which directs the reader to the Causes of Loss form which defines covered cause of loss as "Risks of Direct Physical Loss" not otherwise limited or excluded. The conclusion is that everything is included that is not excluded. Yet, the exclusions and restrictions of the policy relate to nothing since there are no identified covered causes.

Travelers cannot say that the identified source for the structural demise of the building were due to construction-related means, property maintenance, property repair, the intrusion of water, or any other item. Because of that, Travelers should not be able to claim there is no covered cause of loss. In fact, what is missing is whether there is an efficient cause of the structural demise-which

is entirely unknown. Travelers itself has accepted the value of this claim with its $17.4 million policy for replacement of the premises. As it currently stands, there is no question but that the premises needs to be replaced. Further, Travelers cannot trace cause since the policy is an open perils policy and since cause cannot be explained, the policy and law of Wisconsin mandate coverage. That is, there are no applicable exclusions since the Travelers cannot identify the efficient cause.

### F. RUST & INTRUSION

Without offering a conclusion as to the efficient cause of the damage to the Horizon West building, Travelers relies on the rust exclusion to try to evade its duties. Here, rust is not a cause but a result of some sort of liquid intrusion. In its own policy, Travelers spells out its own coverage when there is intrusion, there are excluded circumstances concerning specifically water:

> **g. Water**
>
> (1) Flood, surface water, waves (including tidal wave and tsunami) tides, tidal water, overflow of any body of water, or spray from any of these, all whether driven by wind (including storm surge) or not:
> (2) mudslide or mudflow;
> (3) Water or sewage that backs up or overflows or is otherwise discharged from a sewer, drain, sump, sump pump or related equipment;
> (4) Water under the ground surface pressing on, or flowing or seeping through;
>
> (a) Foundations, walls, floors or paved surfaces;
> (b) Basements, whether paved or not; or,
> (c) Doors, windows or other openings; or
>
> (5) Waterborne material carried or otherwise moved by any of the water referred to in (1), (3), or (4), or material carried otherwise moved by mudslide or mudflow.

CAUSES OF LOSS—SPECIAL FORM at page 2 of 12 part of the Travelers policy at issue. Travelers cannot identify an efficient cause of the structural deficiency but as most do, agree that water is at least one cause. Travelers has the duty to identify the exclusion and if it cannot, then it is not excluded. The insurance company relies on the results of water intrusion, to wit: rust, without giving heed to the question of whether the rust was caused by water infiltration that is covered or

excluded. Since it cannot say how it occurred, it cannot rely on the rust provisions to deny coverage. The efficient cause is the unknown source of water infiltration whether due to design, construction, maintenance or for any other reason. Moreover, the rust exclusion language is as follows:

> **2.** We will not pay for loss or damage caused by or resulting from any of the following:
> *****
> **d.** (2) Rust, or other corrosion, fungus, decay, deterioration, hidden or latent defect or any quality in property that causes it to damage or destroy itself…

The language is at best vague since it relies on the last part of the sentence "…that causes it to destroy or damage itself…" Does this sentence mean that Travelers will pay damages if the building is damaged by "itself" but not due to other causes? That seems to be the import but in the case of the terms deterioration, decay and corrosion it would seem, if standing alone, the policy would never cover any non-wear-and-tear damages. Rust needs to be caused by water intrusion in conjunction with steel or iron. Rust is defined as the reaction of iron and oxygen in the catalytic presence of water or air moisture. Necessarily, it is caused by water or similar liquid. In the Travelers policy there are excluded water intrusion circumstances but, necessarily, there is also covered water intrusion though the covered areas of water intrusion are not identified. Travelers relies on the policy provision for rust that relies on an incorrect definition or explanation since it suggests that the enumerated items are not damaging or destroying itself. At a minimum, this policy provision is ambiguous because it is capable of more than one meaning. Therefore, it must be construed against the drafter—Travelers. In the event the effect of an exclusion is uncertain, the court must strictly and narrowly construe the exclusion against the insurer. *Cardinal v. Leader Nat'l Ins. Co.,* 166 Wis.2d 375, 480 N.W. 2d 1 (S. Ct.,1992). The rust exclusion cannot be countenanced since it is not the efficient cause of the problem, it exists as a result of two (2) other,

non-excluded causes. More importantly, Travelers cannot say how it developed and thus, whether it is covered, or not.

### G. GOVERNMENTAL ACTION AND PUBLIC POLICY

Travelers also relies on the governmental action of the City of Waukesha as a defense to the policy, i.e., a policy exclusion. However, the policy in the CAUSES OF LOSS—SPECIAL FORM states as follows:

> **c. Legal Liability Coverage Form**
>
> (1) The following exclusions do not apply to insurance under this Coverage Form:
>
> (a) Paragraph B.1.a., Ordinance or Law;
> (b) Paragraph B.1.C. Governmental Action;
> (c) Paragraph B.1.d., Nuclear Hazard;
> (d) Paragraph B.1.e., Utility services; and
> (e) Paragraph B.1.f. War and Military Action.

The policy clearly eliminates the Ordinance and Law and Government Action exclusions Travelers is attempting to rely upon.

In addition to the foregoing, there is a significant public policy argument that must be raised. This is entirely appropriate because we have recently seen in Florida the collapse of a condominium building resulting in numerous deaths. *See*, Affidavit of Michael J. Ganzer at Exhibit L. With this background, and as suggested above, the property owners by reason of the policy are stuck. They have been put on notice of a dangerous situation by the City of Waukesha and then ordered to leave the premises. The provision of the policy that provides the insured cannot recover if an evacuation order is entered and then an actual raze order is issued subsequent thereto, Travelers is encouraging its policyholders to stay in an unsafe building in order to afford coverage. Parties can contract as they wish but the terms of the contract cannot contravene state law of public policy. *McPhee v. American Motorists Ins. Co.,* 57 Wis.2d 669 at 673, 205 N.W.2d 152 at 155 (1973). In the case at bar, the contractual provisions of the policy that exclude government action,

must be rejected because it is clearly against public policy to be in the position to obtain insurance proceeds if the policy requires the homeowners to choose between safety and coverage. Our laws cannot possible allow this to be a choice.

One of the add-ons to the insurance policy is the CAUSES OF LOSS—SPECIAL FORM The causes of loss-special form provides risks of direct physical loss will be covered unless they are excluded by Section B of the Exclusions or limited in Section C of Limitations. In the Exclusions section, the only item that might apply would be the ordinance or law provision. We have already stated why the provision is inapplicable but even if it were not otherwise excluded, Wisconsin law should not allow the practice of Travelers to pay for collapse but not evacuation or a raze order. The ordinance or law that enforces compliance puts the unit owner in a very difficult situation. It should be against public policy for the homeowners and homeowners associations to have to decide about whether they follow a validly issued order to evacuate and then a subsequent order to raze or to stay on site until there is evidence of a compensable collapse.

**H. ADDITIONAL CLAIMS**

There are other compensable items in the policy that should be included in the damages award but need some discovery and time to present the proper claims. They are:

1. for building property. $126,604.00;
2. for business personal property of the Association;
3. $128,395.00 for each event for business income and extra expense (since the limit is already met we will not ask herein for the also applicable civil authority and alterations additional coverages, nor that each even) for the Association;
4. $25,000.00 for each described premises times 49 homeowner units and the Association for the Debris Removal Additional Coverage ($1.25 million total);
5. $25,000.00 for each described premises times 49 homeowner units and the Association for the Pollutant Cleanup Additional Coverage as respects asbestos found within the building ($1.25 million total);
6. $25,000.00 for each described premises times 49 homeowner units and the Association for the Increased Cost of Construction Additional Coverage ($1.25 million total);

7. $5,000.00 per occurrence for each of at least the three events giving rise to covered loss under the Property Claim Data Expense Additional Coverage ($15,000.00 total);
8. $5,000.00 per occurrence for each of at least the three (3) events giving rise to covered loss under the Business Income and Extra Expense Claim Data Expense Additional Coverage ($15,000.00 total);
9. $5,000.00 per occurrence for each of at least the three (3) events giving rise to covered loss under the Extra Expense Additional Coverage ($15,000.00 total);
10. $25,000.00 per occurrence for each of at least the three (3) events giving rise to covered loss under the Accounts Receivable Additional Coverage ($75,000.00 total);
11. $250,000.00 per occurrence for each of at least the three (3) events giving rise to covered loss under the ordinance or Law Additional Coverage in the Building Owners Extra Endorsement ($750,000.00 total);
12. $25,000.00 per occurrence for each of at least the three (3) events giving rise to covered loss under the Tenant Move Back Expense Additional Coverage in the Building Owners Extra Endorsement ($75,000.00 total); and
13. $25,000.00 per occurrence for each of at least the three (3) events giving rise to covered loss under the Extra Expense Additional Coverage in the Building Owners Extra Endorsement ($75,000.00 total).
14. An amount up to $50,000.00 per unit for the following Additional Coverages as we obtain more information on each homeowner's loss: Preservation of Property; Personal Effects; Property Off Premises; Covered Property In Transit; and Valuable Papers and Records.

Each of these claims should be addressed at later proceedings after the Court deems the policy valid and enforceable as it relates to the claims now before the Court upon the defense Motion to Dismiss. Our position is that judgment should be entered on the underlying claim and the balance of the enforceable claims should be considered thereafter.

## I. BAD FAITH

The Plaintiff's allegations of bad faith are readily apparent. This is an all perils policy that the insurer stated had never made a coverage determination despite the fact that it has aggressively inspected the premises, hired sophisticated engineers and had almost six months to evaluate the claim. Here, since it has filed its Motion to Dismiss, it has denied the claims. Travelers has also attempted to deny coverage based on a form when it had, not just notice, but also, had unparalleled opportunity to investigate and, yet, it claims it needed a proof of loss form.

Travelers seeks to have the bad faith portion of the Complaint dismissed as well. Bad faith exists when an insurance company refuses to pay its insured and is found to be in the wrong. Obviously, the plaintiffs believe the insurance company is in the wrong and that the benefits are rightfully owed to them in the first place. The leading case is *Anderson v. Continental Insurance Company*, 85 Wis.2d 675, 271 N.W.2d 368 (1978). In short, the test of bad faith by an insurance company is whether the claim is fairly debatable and where it has intentionally denied a claim that was at least fairly debatable. At this stage of the litigation, the deposition of the adjuster is not yet available. It is clear from all of the preceding arguments, that Travelers has agreed to essentially cover everything that is not excluded. The exclusions don't apply as is obvious and it is not fairly debatable. This brief points all of the obfuscations by Travelers to try and avoid paying this claim. Travelers' relies on exclusions that do not apply and are not even debatable. Travelers knows that under the policy everything is covered, but for the exclusions, and that if the language is unclear, or in conflict with other portions of the policy, the policy holders are to be successful. Here, the loss is covered, exclusions don't apply, Travelers has tried to force the proof of loss of claim on this Court despite having received the proof of loss, but more importantly, having been actively involved in the diagnosis of the problems at Horizon West and having been substantially involved throughout, it would appear that Travelers, rather than showing good faith, is showing bad faith in that it is trying to find any possible way to avoid this claim at the expense of its insureds and without regard for the circumstances of the insureds. *See*, Affidavit of Michael J. Ganzer at Exhibits B, J and M. The plaintiffs respectfully request that the Court deny the motion to dismiss as it relates to the bad faith claim, recognizing that a prima facie case has been made in the Complaint such that the claim survives and the plaintiffs can enter into discovery on the relevant issues.

## III. CONCLUSION

It is quite clear that the policy in question covers this loss. In fact, the Court should consider summary judgment against the defendant at this point in time as a result of Travelers own summary judgment pleadings—styled as a Motion to Dismiss. It is respectfully requested the Court grant judgment to the plaintiffs and all of them in the amount of $17,704,099.00 Alternatively, the Motion to Dismiss must be denied. The men and women who have been forced out of their homes in the blink of an eye about which they had no advanced knowledge and no recourse should be entitled to a judgment in their favor both as a result of the direct grant of coverage contained in the policy as well as the requirements under the law that the homeowners must choose between following an order or securing insurance coverage. Encouraging people to ignore safety orders cannot be approved by this Court as that is what Travelers proposes. For all the reasons stated, it is imperative that the Motion to Dismiss of Travelers be denied and that in fact judgment be granted in favor of the plaintiffs under the facts and circumstances of this case.

Dated this _____ day of June, 2022.

TERSCHAN, STEINLE, HODAN & GANZER, LTD.
ATTORNEYS FOR PLAINTIFFS

*ELECTRONICALLY SIGNED BY MICHAEL J. GANZER*

**P. O. ADDRESS:**
309 NORTH WATER STREET
SUITE 215
MILWAUKEE, WI 53202
414-258-1010