**NONPRECEDENTIAL DISPOSITION**
To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals
### For the Seventh Circuit
### Chicago, Illinois 60604

Argued October 3, 2023
Decided November 17, 2023

**Before**

MICHAEL B. BRENNAN, *Circuit Judge*

MICHAEL Y. SCUDDER, *Circuit Judge*

AMY J. ST. EVE, *Circuit Judge*

No. 22-3191

| | |
|---|---|
| HORIZON WEST CONDOMINIUM HOMES ASSOCIATION, INC., et al., *Plaintiffs-Appellants*, v. TRAVELERS INDEMNITY COMPANY OF CONNECTICUT, *Defendant-Appellee*. | Appeal from the United States District Court for the Eastern District of Wisconsin. No. 22-cv-00597-LA Lynn Adelman, *Judge*. |

### O R D E R

In December 2021, the City of Waukesha ordered the residents of a high-rise condominium building to evacuate upon determining that the building was at risk of imminent collapse. A month later, the City directed Horizon West Condominium Homes Association, Inc., to tear down the building at the Association's expense. Seeking compensation, the Association filed a claim with its insurer, The Travelers Indemnity Company of Connecticut, under a one-year commercial property policy that protected against many—though not all—risks to the building.

When Travelers failed to supply coverage on the claim, the Association sued Travelers. On Travelers' motion, the district court dismissed the suit, concluding that all losses occurred outside of the policy period or fell within one of the policy's many exclusions. We agree and affirm. Though mindful of the emotional and financial hardships this litigation and the events underlying it have caused the Association's members, we must give effect to the policy's plain terms, which, as the district court correctly held, do not supply coverage for the claimed losses.

I

A

Sometime before June 5, 2020, residents of Horizon West Condominiums, a 48-unit high-rise building in Waukesha, Wisconsin, noticed that the balconies were unstable. After removing some of the balconies, engineers discovered that structural steel had rusted not only in the balconies themselves, but also in the beams and crossbeams supporting the building. The engineers determined that water had, at some unknown point in time, entered the building and caused substantial rusting.

The City inspected the property in 2020, later determining that the compromised steel structure placed the building at risk of imminent collapse. To protect Horizon West's residents, the City issued an order on December 2, 2021, requiring the building's immediate evacuation. All residents promptly left their homes. In January 2022, the City deemed the building uninhabitable and issued a final demolition order pursuant to Wis. Stat. § 66.0413(1)(b). The order describes structural problems including "significant degradation" of support columns and beams "due to heavy rusting, delamination and deterioration." To date the building remains vacant but standing.

In March 2021, after the City's inspection but before the issuance of the evacuation and demolition orders, Travelers issued a commercial property policy to Horizon West Condominium Homes. The policy provides that Travelers will pay for loss of or damage to the building "caused by or resulting from a Covered Cause of Loss"—defined as any "risk[] of direct physical loss" materializing within the policy period, so long as that risk is not specifically excluded. The policy provided coverage for the one-year period May 11, 2021, to May 11, 2022.

The policy contains several exclusions. Most relevant are the express exclusions for losses caused by: (1) "[t]he enforcement of or compliance with any ordinance or law" that regulates the use or repair of a property or requires "the tearing down of any property," "even if the property has not been damaged"; (2) rust, decay, deterioration, or

"any quality in property that causes it to damage or destroy itself"; (3) faulty workmanship; or (4) collapse. Under the latter exclusion, losses caused by an abrupt collapse of the building or a "loss of structural integrity" short of collapse are not covered, although the policy supplies coverage for "an abrupt falling down or caving in of a building" under limited circumstances.

In March 2022, the Association and individual unit owners submitted a claim to Travelers seeking $17,023,172 under the policy—the building's estimated replacement cost. After some delay in processing the claim, the Association, joined by 34 unit owners, sued the insurer in Wisconsin state court for breach of contract and bad faith. Travelers responded by invoking 28 U.S.C. § 1332 and removing the case to federal court. In its complaint, the Association alleged that Travelers unreasonably failed to make a coverage decision. They contended that structural defects rendered the building uninhabitable, prompting an evacuation and causing residents to lose their housing, equity, and personal property. The plaintiffs pointed to both the building's structural faults and "the subsequent raze order" as the cause of their losses—losses they saw as covered under the Travelers policy.

B

Travelers moved to dismiss the complaint. As to the individual unit owners, Travelers argued that because they were not parties to the policy at issue, they were not proper plaintiffs, a position the district court agreed with and is not challenged on appeal. From there Travelers contended that the policy did not extend coverage to, or at least excluded, the claimed losses. In the terms of the policy, Travelers argued that there was no direct physical loss or damage from a covered cause of loss that arose during the policy period.

The district court agreed with Travelers and dismissed the complaint. The district court first determined that the only potentially covered events during the policy period were the City's declaration that the building was uninhabitable and the evacuation and demolition orders issued in December 2021 and January 2022. Having limited its review to those alleged causes of loss, the district court then concluded that any of three exclusions applied: (1) for losses caused by the enforcement of any ordinance or law; (2) for damage caused by rust and corrosion; and (3) for damages caused by a loss of structural integrity. And because bad-faith claims can succeed only if a policy provides coverage, the district court dismissed that claim too.

Along the way the district court also considered and rejected the Association's argument that it could obtain coverage under an exception to the ordinance-or-law

exclusion found in an optional add-on to the policy—the Legal Liability Coverage Form—because the parties had not made that particular coverage a part of the policy. The district court further disagreed with the Association's contention that the policy violated Wisconsin public policy. Contrary to the Association's view, the policy did not encourage unit owners to "create" coverage by continuing to live in the building until it actually collapsed, because the portion of the policy supplying coverage for sudden collapse does not apply to collapses caused by "known" decay.

The Association now appeals.

## II

### A

This coverage dispute requires us to determine how the Travelers policy applies to the facts alleged in the complaint, which we accept as true at the pleading stage. See *Stant USA Corp. v. Factory Mut. Ins. Co.*, 61 F.4th 524, 525 (7th Cir. 2023). Contrary to the Association's arguments on appeal, the motion to dismiss did not require conversion into a motion for summary judgment, see FED. R. CIV. P. 12(d), as the district court did not rely on "matters outside the pleadings" in reaching its decision. See FED. R. CIV. P. 10(c) (deeming a "copy of a written instrument that is an exhibit to a pleading … part of the pleading for all purposes"); see also *Bible v. United Student Aid Funds, Inc.*, 799 F.3d 633, 639–40 (7th Cir. 2015) ("In deciding a Rule 12(b)(6) motion, the court may consider documents attached to a complaint, such as contract documents, without converting the motion into one for summary judgment.").

Wisconsin law governs our independent review of the district court's Rule 12(b)(6) dismissal. See *Stant USA Corp.*, 61 F.4th at 525–26; *State Farm Mut. Auto. Ins. Co. v. Pate*, 275 F.3d 666, 669 (7th Cir. 2001). Under Wisconsin law, "contract language is construed according to its plain or ordinary meaning." *Ash Park, LLC v. Alexander & Bishop, Ltd.*, 866 N.W.2d 679, 685 (Wis. 2015). We ask "'what a reasonable person would understand the words [of the policy] to mean under the circumstances.'" *Id.* (quoting *Seitzinger v. Cmty. Health Network*, 676 N.W.2d 426, 433 (Wis. 2004)).

### B

The district court was right to conclude that both the language of the policy's exclusions and its temporal limits foreclose coverage here. As to timing, the policy does not cover events that preceded its effective date, and the complaint makes clear that the structural damage to the building existed before the policy took effect. The complaint alleges not only that the residents first noticed unstable balconies before June 5, 2020—

nearly a year before the policy went into effect in May 2021—but also that when engineers removed the balconies, they realized that past water seepage had caused beams and crossbeams to rust. Even if the losses occurred within the policy period, the policy contains several exclusions, including one for losses caused by rust, the ordinance-or-law exclusion, and the collapse exclusion, that independently preclude the Association's claim for coverage.

*The Rust Exclusion*. As to this exclusion, the Association attempts to recharacterize defects like rust as "end products," not causes, of the losses suffered. This position is inconsistent with the complaint, which in no uncertain terms states that rust compromised the building's steel structure and the balconies, causing instability. The Association cannot change its factual allegations or press arguments for the first time on appeal. See *Wagner v. Teva Pharms. USA, Inc.*, 840 F.3d 355, 359 (7th Cir. 2016); *Johnson v. Prentice*, 29 F.4th 895, 903 (7th Cir. 2022). The Association asserted below that rust caused the instability and, by extension, the loss, and so it must contend with the fact that the policy expressly identifies "rust" as an excluded cause of loss.

The Association attempts to do so by challenging the rust exclusion as impermissibly vague. Under Wisconsin law, if an insurer writes a coverage exclusion in a way that is susceptible to multiple reasonable interpretations, the language is to be narrowly construed against the insurer. See *Phillips v. Parmelee*, 840 N.W.2d 713, 716 (Wis. 2013). But this is not so when the policy is unambiguous. *Id.* Recall that the rust exclusion states that Travelers will not pay for losses caused by "[r]ust, other corrosion, fungus, decay, deterioration, hidden or latent defect or any quality in property that causes it to damage or destroy itself." The Association sees the phrase "that causes it to damage or destroy itself" as unclear, rendering the entire provision vague. But the disjunctive list means that this phrase does not modify "rust," which is an excluded event. See *Day v. Allstate Indem. Co.*, 798 N.W.2d 199, 206 (Wis. 2011) ("A court will enforce exclusions that are clear from the face of the policy.").

In the alternative, the Association insists that the rust exclusion does not apply because rust is the result of water intrusion, which the policy covers to some degree. The Association sees a potential conflict in the policy—that the type of water intrusion that caused rusting could be covered under the policy, while damage caused by the rust is excluded. It therefore invites us to resolve the contradiction in favor of coverage. We cannot do so. Wisconsin law dictates that "if the covered risk is not actionable without the occurrence of an excluded risk, then the covered risk is not sufficiently independent to trigger coverage under the policy." *Siebert v. Wis. Am. Mut. Ins. Co.*, 797 N.W.2d 484, 492 (Wis. 2011). Any water intrusion here did not directly damage the property (such as by flooding) and so its collateral effects, like rust, do not trigger the water-intrusion

coverage. In the end, we see no conflict to resolve in the insured's favor. Remember, too, that any water intrusion occurred outside the policy period.

*The Ordinance-or-Law Exclusion*. This exclusion likewise defeats the Association's claim for coverage. By its terms, the exclusion states that Travelers will not pay for a loss caused by, or resulting from, "[t]he enforcement of or compliance with any ordinance or law" that, like Wis. Stat. § 66.0413(1)(b), requires "the tearing down of any property." Resisting the application of this exclusion, the Association contends both that "the evacuation itself is an insured event that caused damages" and that the evacuation and raze orders were "the result of the loss, not the cause of a loss." But the complaint alleged that the residents' compliance with the City's orders caused them to leave and lose their homes.

Regardless, the Association urges that the Legal Liability Coverage Form does away with the ordinance-or-law exclusion. Here, too, we cannot agree. The policy, which the Association incorporated into its complaint, see FED. R. CIV. P. 10(c), says that the Legal Liability Coverage Form "may be attached to your policy," and that *if* it is "part of this policy," the ordinance-or-law exclusion does not apply. Here, however, the policy's "Listing of Forms" does not include the Legal Liability Coverage Form, and the form is not attached to the policy in the record—one that, according to the Association, "is a true and correct copy of the insurance policy in question." At no point has the Association argued that the policy it attached to its complaint is incomplete. The district court was therefore correct to conclude that the provisions of the Legal Liability Coverage Form are not part of the parties' contract, meaning that the ordinance-or-law exclusion was in effect.

*The Collapse Exclusion*. Finally, even if neither the ordinance-or-law exclusion nor the rust exclusion applies, the policy's collapse exclusion bars coverage for losses caused by "loss of structural integrity." The complaint alleged that the City deemed the building to be in danger of collapsing because of structural deficiencies—not that the building abruptly fell, which the policy *would* cover.

As a last resort, the Association posits that the insurance policy and its exclusions in particular run afoul of Wisconsin public policy. In the Association's view, because the policy excludes losses caused by compliance with ordinances or laws, the policy encourages policyholders not to comply and to remain in an unsafe building to obtain coverage. But even if residents could remain in the building despite the evacuation order—or even if the ordinance-or-law exclusion were eliminated—the collapse exclusion would bar coverage. Prior notice that the building was in danger of collapsing would mean that any collapse would not be covered. And although the Association

argues that the policy provides only "illusory" protection, its plain language says otherwise. The Association correctly points out that "[i]llusory policy language defines coverage in a manner that coverage will never actually be triggered." *Cont'l W. Ins. Co. v. Paul Reid, LLP, GPS, Inc.*, 715 N.W.2d 689, 691 (Wis. Ct. App. 2006). Here, the fact that the policy covers, at a minimum, loss and damage resulting from a sudden collapse means that it is not illusory.

## III

In no way are the unfortunate circumstances giving rise to this case lost on us. The residents of Horizon West Condominiums had little choice but to flee their homes at a moment's notice, and we have no doubt they have experienced many hardships, financial and otherwise. Our role, however, is limited to interpreting the terms and conditions of the policy between the Association and Travelers. In these circumstances, the policy's plain and unambiguous terms and conditions leave us no choice but to AFFIRM.

# UNITED STATES COURT OF APPEALS FOR THE SEVENTH CIRCUIT

Everett McKinley Dirksen
United States Courthouse
Room 2722 - 219 S. Dearborn Street
Chicago, Illinois 60604



Office of the Clerk
Phone: (312) 435-5850
www.ca7.uscourts.gov

**FINAL JUDGMENT**

November 17, 2023

Before

**MICHAEL B. BRENNAN**, *Circuit Judge*
**MICHAEL Y. SCUDDER**, *Circuit Judge*
**AMY J. ST. EVE**, *Circuit Judge*

| | |
|---|---|
| No. 22-3191 | HORIZON WEST CONDOMINIUM HOMES ASSOCIATION, INC., et al.,<br><br>    Plaintiffs - Appellants<br><br>v.<br><br>TRAVELERS INDEMNITY COMPANY OF CONNECTICUT,<br><br>    Defendant - Appellee |
| **Originating Case Information:** | |
| District Court No: 2:22-cv-00597-LA<br>Eastern District of Wisconsin<br>District Judge Lynn Adelman | |

The judgment of the District Court is **AFFIRMED**, with costs, in accordance with the decision of this court entered on this date.

Clerk of Court

form name: **c7_FinalJudgment**     (form ID: **132**)

# UNITED STATES COURT OF APPEALS FOR THE SEVENTH CIRCUIT



Everett McKinley Dirksen
United States Courthouse
Room 2722 - 219 S. Dearborn Street
Chicago, Illinois 60604

Office of the Clerk
Phone: (312) 435-5850
www.ca7.uscourts.gov

## NOTICE OF ISSUANCE OF MANDATE

December 11, 2023

To:  Gina M. Colletti
UNITED STATES DISTRICT COURT
Eastern District of Wisconsin
Milwaukee, WI 53202-0000

| | |
|---|---|
| No. 22-3191 | HORIZON WEST CONDOMINIUM HOMES ASSOCIATION, INC., et al.,<br>    Plaintiffs - Appellants<br><br>v.<br><br>TRAVELERS INDEMNITY COMPANY OF CONNECTICUT,<br>    Defendant - Appellee |
| **Originating Case Information:** ||
| District Court No: 2:22-cv-00597-LA<br>Eastern District of Wisconsin<br>District Judge Lynn Adelman ||

Herewith is the mandate of this court in this appeal, along with the Bill of Costs, if any. A certified copy of the opinion/order of the court and judgment, if any, and any direction as to costs shall constitute the mandate.

RECORD ON APPEAL STATUS:                              No record to be returned

form name: **c7_Mandate**    (form ID: **135**)